Accordingly, I would reverse the decision of the district court which modified custody by awarding Kyle primary physical custody of the children.

---

In re Estate of Mason D. Robb, deceased.
Linda Hahn and Shawn Eichman, appellees, v.
Theodore J. Robb, Personal Representative
and Trustee, appellant.

___ N.W.2d ___

Filed October 22, 2013.    No. A-12-1002.

1. **Decedents' Estates: Trusts: Appeal and Error.** In trust administration and probate cases, an appellate court uses an "issue-specific approach" to determine the appropriate standard of review.
2. **Decedents' Estates: Trusts: Equity: Appeal and Error.** Both probate and trust administration matters are reviewed for error appearing on the record, absent an equity question.
3. ____: ____: ____: ____. Both probate and trust administration matters are reviewed de novo, where an equity question is presented.
4. ____: ____: ____: ____. The removal of a trustee is a question of equity. Accordingly, in a trust proceeding, an appellate court reviews de novo the question of whether a trustee was properly removed.
5. **Decedents' Estates: Appeal and Error.** The removal of a personal representative is not an equity question. The removal of a personal representative is reviewed for error appearing on the record.
6. **Decedents' Estates: Executors and Administrators: Appeal and Error.** A trial court's decision whether to appoint a special administrator is not a question of equity. Appointment of a special administrator is reviewed for error appearing on the record.
7. **Decedents' Estates: Executors and Administrators.** When an executor has a personal interest in the administration of an estate and in the disposition of the estate property, and when the circumstances disclose that those interests prevent him from performing his duties in an impartial manner, he should be removed.
8. **Trusts.** A trustee commits a breach of trust if he violates any of the duties owed to beneficiaries.
9. ____. A trustee has the duty to administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with the Nebraska Uniform Trust Code.
10. ____. Transactions involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal

interests are voidable unless they are authorized, are approved, or were entered into before the trustee contemplated becoming a trustee.

11. **Decedents' Estates: Executors and Administrators.** A trial court has the authority to appoint a special administrator under Neb. Rev. Stat. § 30-2457 (Reissue 2008).

12. ____: ____. After a special administrator is appointed, the administrator has the same powers as a personal representative, except the power is limited to the duties prescribed in the trial court's order.

Appeal from the County Court for Hall County: ARTHUR S. WETZEL, Judge. Affirmed.

David C. Huston, of Huston & Higgins, for appellant.

Ronald S. Depue, of Shamberg, Wolf, McDermott & Depue, for appellees.

INBODY, Chief Judge, and IRWIN and RIEDMANN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Theodore J. Robb appeals the order of the county court for Hall County removing him as the personal representative of his deceased father's estate and as the trustee of his father's inter vivos trust. The issue raised is whether the trial court erred in determining that it was in the best interests of the estate and the trust to remove Theodore from his fiduciary positions. Because Theodore's individual interests conflicted with the interests of the estate and the trust, we affirm the trial court's decision to remove him from his fiduciary positions.

## II. BACKGROUND

Mason D. Robb passed away in March 2010. Pursuant to his last will and testament and his trust documents, his son, Theodore, became the personal representative of his estate and the trustee to the inter vivos Mason D. Robb Revocable Living Trust (the Trust). The Trust included three pieces of real estate: the Tri Street house, the Hall County farm, and the Sherman County pastures.

The Trust declared that the trustee should hold and use the Trust property for two purposes: to pay administrative costs

and the settlor's debts and for the benefit of the Mason D. Robb QTIP Family Trust (the Family Trust). The Trust directed the trustee to separate the funds in the Family Trust into two equal shares: one for the benefit of Theodore and one for the benefit of Theodore's sister, Linda Hahn (Linda). The share created for Theodore was to be delivered to him outright, and the share created for Linda was to be held in trust for Linda's benefit. The Family Trust stated that Linda should receive income from her share of the Family Trust periodically throughout her lifetime.

In September 2011, Linda and her son, Shawn Eichman (Shawn), filed a motion to remove Theodore as the personal representative. In December, Linda and Shawn filed an additional motion to remove Theodore as the trustee. Linda and Shawn also filed a petition to appoint a special administrator to administer the estate and the Trust in the event that Theodore was not removed. The county court of Hall County heard the matter in September 2012.

### 1. THEODORE'S ACTIONS AS PERSONAL REPRESENTATIVE

The evidence presented at trial indicates that Theodore received a $50,000 "death-bed transfer" from his father. Theodore admitted receipt of the payment and agreed that the payment should be treated as an estate asset, but he stated that he had not deposited it in the estate account at the time of trial. Theodore also failed to include it in either the inventory or the amended inventory filed with the court.

The evidence also reveals that Theodore sold several items of personal property belonging to his father, in the amount of approximately $900, but that he had not included that amount in any accounting filed with the court as of the date of the hearing. Theodore had, however, deposited the funds into the estate account.

Theodore was also untimely in his filing of his original inventory and accounting. Despite a court order, Theodore failed to file an amended inventory or an accounting that included funds and assets through June 15, 2012; rather, his amended filings were current through only 2011.

## 2. Theodore's Management
### as Trustee

The evidence presented at trial showed that after becoming the trustee, Theodore undertook efforts to improve the Trust properties. He compensated himself and others he hired for their efforts in improving the real property. At times, he compensated himself by using the property, determining a rental price to charge himself for that use, and offsetting the rent he owed the Trust against the compensation the Trust allegedly owed him for improving the property. The efforts to improve the three properties were substantial.

Theodore claimed the Trust owed him $7,461.26 for improving the Tri Street house. Some of his expenses for the property included painting the house and paying the utilities and taxes. After improving the house, Theodore began renting it to a third party in October 2011 for $650 per month. At the time of trial, Theodore had received $7,800 in rent from the property but had deposited only 3 months of rent ($1,950) into the Trust account. He also credited 3 months of rent ($1,950) against his costs for improving the property. After crediting $1,950 against the $7,461.26 he claimed he was owed, Theodore determined that the Trust owed him $5,511. At the time of trial, 6 months of rent from the Tri Street property were not accounted for in Theodore's accounting.

Theodore claims the Trust owed him $41,675 for his work improving the Hall County farm and $37,175.54 for his work improving the Sherman County pastures. The Hall County farm had fallen into a state of disrepair before Theodore began improving it. Theodore hired laborers to help remove "junk" from the farm, including tires and overgrown trees. The Sherman County pastures required pressure spraying, installation of water lines, and other labor to make the land suitable for rental.

Theodore completed a large portion of the work on these properties himself, but he also hired others to help. Robert Boyd testified that he worked for Theodore improving both properties. According to Boyd, Theodore paid him a flat rate of $2,500 per month, either in cash or by check written on Theodore's personal checking account. Boyd testified that

Theodore hired other men to work as well, but he did not provide details. Boyd also testified that he sometimes worked on Theodore's property in addition to the Trust property and that his compensation covered work on both properties. Theodore did not issue W-2 or 1099 forms to the workers.

After working to improve the Hall County farm and Sherman County pastures, Theodore generated income from the properties by renting them to himself and crediting the Trust with the rental value. The parties dispute whether Theodore charged the fair market rental values of the properties.

In 2011 and 2012, Theodore rented the Hall County farm and charged himself $29,062 per year, which equates to $200 per acre. He had not paid any rent for 2012 at the time of trial but acknowledged that he did owe that amount to the Trust. He testified that he determined the rental amount of $200 per acre because that is the price another individual paid to rent the property in 2010. Theodore's appraiser placed the annual rental value at $6,700 higher than Theodore was paying. Linda and Shawn's appraiser determined the rental value of the property to be around $43,000, which is well over $10,000 more than Theodore paid. As a result of the litigation surrounding the estate and the Trust, Theodore executed a contract to sell the Hall County farm to an acquaintance for $6,000 per acre, but Linda and Shawn's appraiser determined that the property was worth $10,000 per acre.

Theodore also rented the Sherman County pastures to himself at a price of $6,400 per year. Theodore determined this rent based on the amount he charged someone else to rent one of his pastures. He did not deposit this amount into the Trust account, but, rather, credited that amount to the Trust against the amount he claimed the Trust owed him for his work improving the property. Theodore hired an appraiser, who determined the rental value of the property to be $14,554 per year.

In addition to the real estate, Theodore also received a $50,000 "death-bed transfer" from his father's account. Both parties agree that the money should be deposited into the Trust account, but Theodore had not yet deposited it at the time of trial, 2½ years after his father's death. As of the date of trial,

Theodore claimed the Trust still owed him $112,896.87. As a result, Linda had not yet received any payments from the Family Trust.

### 3. Trial Court Determination

The court found that Theodore should be removed from his positions as the personal representative and as the trustee, because his actions in commingling his individual funds with the funds and assets of the estate and the Trust caused irreconcilable conflict and could continue to do so. Accordingly, the trial court determined that removing Theodore from his positions as the personal representative and as the trustee was in the best interests of the estate and the Trust.

This timely appeal followed.

## III. ASSIGNMENTS OF ERROR

On appeal, Theodore argues that the county court erred in removing him from his role as the personal representative and as the trustee, because removal was not in the best interests of the estate and the Trust. In the alternative, Theodore argues that the trial court failed to use a less intrusive method, such as appointing a special administrator, to limit Theodore's role as the personal representative and as the trustee.

## IV. STANDARD OF REVIEW

[1] In trust administration and probate cases, an appellate court uses an "issue-specific approach" to determine the appropriate standard of review. See *In re Margaret Mastny Revocable Trust*, 281 Neb. 188, 198, 794 N.W.2d 700, 710 (2011). Consequently, the applicable standards of review regarding issues arising in probate and trust cases can be enigmatic. Accordingly, we set forth below the applicable standards of review in a slightly unorthodox manner.

### 1. Probate and Trust Issues Not Involving Equitable Issues

[2] Both probate and trust administration matters are reviewed for error appearing on the record, absent an equity question. See *id.*

## 2. Probate or Trust Issues Involving Equitable Issues

[3] Both probate or trust administration matters are reviewed de novo, where an equity question is presented. See *id*.

## 3. Probate and Trust Administration Issues: Equitable or Not

### (a) Trust Administration Cases—Removal of Trustee Is Equitable Issue

[4] The removal of a trustee is a question of equity. See *Burnham v. Bennison*, 121 Neb. 291, 236 N.W. 745 (1931). Accordingly, in a trust proceeding, an appellate court reviews de novo the question of whether a trustee was properly removed.

### (b) Probate Cases—Removal of Personal Representative Is Not Equitable Issue

[5] The removal of a personal representative is not an equity question. See *In re Estate of Krumwiede*, 264 Neb. 378, 647 N.W.2d 625 (2002). The removal of a personal representative is reviewed for error appearing on the record. See *In re Estate of Webb*, 20 Neb. App. 12, 817 N.W.2d 304 (2012).

### (c) Probate Cases—Appointment of Special Administrator Is Not Equitable Issue

[6] A trial court's decision whether to appoint a special administrator is not a question of equity. See *In re Estate of Evans*, 20 Neb. App. 602, 827 N.W.2d 314 (2013) (noting that trial court erred in ordering removal of appellant as personal representative rather than making independent determination). Therefore, appointment of a special administrator is reviewed for error appearing on the record.

## V. ANALYSIS

### 1. Removal From Role as Personal Representative

Theodore argues that the trial court erred in removing him as the personal representative. We disagree.

[7] Neb. Rev. Stat. § 30-2454(a) (Reissue 2008) states that a court may remove a personal representative from an estate if "removal would be in the best interests of the estate, or if it is shown that a personal representative . . . has mismanaged the estate or failed to perform any duty pertaining to the office." See, also, *In re Estate of Seidler*, 241 Neb. 402, 490 N.W.2d 453 (1992). When an executor has a personal interest in the administration of an estate and in the disposition of the estate property, and when the circumstances disclose that those interests prevent him from performing his duties in an impartial manner, he should be removed. See *In re Estate of Marconnit*, 119 Neb. 73, 227 N.W. 147 (1929).

In this case, Theodore failed to impartially perform his duties as the personal representative. In particular, as the personal representative, Theodore was entrusted with the duty to manage and properly account for the property that was part of the estate. The record reveals that Theodore has failed to properly account for estate assets, particularly the $50,000 "deathbed transfer." While Theodore acknowledged that this money should be considered property of the estate, he had not deposited it into the estate's account during the 2½ years between his father's death and the hearing. In addition, Theodore sold items of personal property belonging to his father without notification to the remaining heirs and had not accounted for the income. Furthermore, Theodore did not timely file his original inventory and accounting, nor was it complete. These actions disclose that Theodore's personal interest in the estate prevented him from impartially performing his duties as the personal representative. We agree with the trial court that allowing Theodore to continue as the personal representative was not in the best interests of the estate and that his removal was proper.

## 2. Removal From Role
### as Trustee

Theodore argues that the trial court erred in removing him from his role as the trustee. We disagree.

Neb. Rev. Stat. § 30-3862(b) (Reissue 2008) states that the court may remove a trustee if:

(1) the trustee has committed a serious breach of trust;

(2) lack of cooperation among cotrustees substantially impairs the administration of the trust;

(3) because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries; or

(4) there has been a substantial change of circumstances or removal is requested by all of the qualified beneficiaries, the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available.

The language of § 30-3862 is identical to that of Unif. Trust Code § 706, 7C U.L.A. 575 (2006). The comments to § 706 of the Uniform Trust Code are helpful in evaluating whether a trustee has committed a "serious breach of trust." The comment to § 706 provides:

The breach must be "serious." A serious breach of trust may consist of a single act that causes significant harm or involves flagrant misconduct. A serious breach of trust may also consist of smaller breaches, none of which individually justify removal when considered alone, but which do so when considered together.

7C U.L.A. at 576. See, also, *In re Charles C. Wells Revocable Trust*, 15 Neb. App. 624, 734 N.W.2d 323 (2007).

[8,9] A trustee commits a breach of trust if he violates any of the duties owed to beneficiaries. See Neb. Rev. Stat. § 30-3890(a) (Reissue 2008). A trustee has the duty to "administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with the Nebraska Uniform Trust Code." Neb. Rev. Stat. § 30-3866 (Reissue 2008). The Nebraska Uniform Trust Code, in turn, states that trustees owe the beneficiaries duties that include the duty of loyalty, impartiality, prudent administration, protection of trust property, proper recordkeeping, and informing and reporting.

[10] The duty of loyalty requires a trustee to administer the trust solely in the interests of the beneficiaries. Neb. Rev.

Stat. § 30-3867(a) (Reissue 2008). Transactions involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal interests are voidable unless they are authorized, are approved, or were entered into before the trustee contemplated becoming a trustee. See § 30-3867(b).

To further help prevent conflicts of interests, Neb. Rev. Stat. § 30-3875 (Reissue 2008) requires trustees to keep adequate records of the trust administration and to keep trust property separate from the trustee's property. Trust property must be designated so that the trust's interest, "to the extent feasible, appears in records maintained by a party other than a trustee or beneficiary." *Id*.

Trustees can run afoul of these requirements when they commingle their personal property with trust property. In *Sherman v. Sherman*, 16 Neb. App. 766, 751 N.W.2d 168 (2008), for example, we found that a trustee's action in leasing land to himself ran afoul to the general prohibitions on self-dealing by a trustee. In that case, the trial court found that the trustee's action in leasing the land to himself for a lower amount than he could have otherwise received violated the trustee's duty to act for the beneficiaries and remaindermen. Accordingly, we determined that the trial court did not clearly err when it removed the trustee. *Id*.

Nebraska law supports the trial court's decision to remove Theodore as the trustee. As discussed above, § 30-3862(b) authorized the trial court to remove Theodore if he committed a serious breach of trust. Theodore committed a breach of trust by commingling his personal property with that of the Trust and by engaging in self-dealing by renting the property to himself at favorable rates. This self-dealing brought his personal interest in a favorable rental price into conflict with Linda's interest in profiting from the property.

Theodore also engaged in self-dealing by compensating himself for improvements he made to the property. He has given the Trust credit against its alleged debt in the form of free rent, but continues to claim that the Trust owes him compensation for his services.

Although his substantial improvements of the Trust property may have been in the best interests of the Trust, when Theodore is collecting compensation from the Trust for his actions, it is not clear that he is acting solely for the benefit of the Trust beneficiaries. Theodore's determination of his own level of compensation places his interests directly at odds with Linda's. His actions are akin to the trustee's actions in *Sherman, supra*, and therefore constitute a serious breach of trust.

In addition to the above, Theodore's failure to account for 6 months of rent from the Tri Street property also raises serious concerns about his ability to effectively fulfill his basic duties as the trustee. Failure to effectively administer the trust constitutes a separate ground for removal under § 30-3862(b).

Theodore's multiple failures to impartially perform the duties owed to the Trust beneficiaries are grounds for his removal. Because of these failures, removal of Theodore as the trustee was proper.

### 3. Failure to Appoint Special Administrator

In his brief, Theodore argues that even if the trial court had concerns about his ability to administer the estate and the Trust, the trial court should have appointed a special administrator to deal with the sale of the Hall County farm and compensation to Theodore for his improvements to the property rather than removing Theodore as the personal representative and as the trustee.

[11] A trial court has the authority to appoint a special administrator

> in a formal proceeding by order of the court on the petition of any interested person and finding, after notice and hearing, that appointment is necessary to preserve the estate or to secure its proper administration including its administration in circumstances where a general personal representative cannot or should not act.

Neb. Rev. Stat. § 30-2457 (Reissue 2008).

[12] After a special administrator is appointed, the administrator has the same powers as a personal representative, except the power is limited to the duties prescribed in the trial

court's order. *In re Estate of Wilson*, 8 Neb. App. 467, 594 N.W.2d 695 (1999).

Although the trial court had the authority to appoint a special administrator in this case, the trial court also had the discretion to make the determination to simply remove Theodore as the trustee. Section 30-2457 authorizes the trial court to appoint a special administrator to act in specific, limited situations where the general personal representative cannot properly fulfill his duty. The problem with appointing a special administrator in this case, however, is that the conflict of interest between Theodore and the duties of the personal representative and the trustee was so substantial that the limited order envisioned in *In re Estate of Wilson, supra*, would not remedy the problem.

Theodore argues that the trial court could have issued an order appointing a special administrator for the limited purposes of selling one property and compensating Theodore for his improvements to the property. Appointing a special administrator for these purposes would not remedy all of the issues the court considered in reaching its conclusion that it was in the best interests of the estate and the Trust that Theodore be removed.

We also note that if Theodore had remained the personal representative and the trustee, conflict likely would continue as a result of Theodore's personally repairing or further improving the Trust property. With a third-party personal representative and trustee, Theodore can continue to work to improve the property and be fairly compensated for those efforts if the personal representative and the trustee determine that doing so is in the best interests of the estate and the Trust.

Because Theodore committed a serious breach of trust, the trial court had the authority to remove him as the personal representative and as the trustee. In this case, where Theodore's conflict of interest permeated almost every aspect of his management of the estate and the Trust, we cannot find error in the trial court's decision to exercise its authority to remove Theodore as the personal representative and as the trustee rather than appointing a special administrator.

## VI. CONCLUSION

The trial court did not err in removing Theodore from his positions as the personal representative and as the trustee, because his actions reveal that his interests irreconcilably conflicted with the interests of the estate and the Trust. Accordingly, the decision of the trial court is affirmed.

AFFIRMED.

---

In re Interest of Sarah H., a child under 18 years of age.
State of Nebraska, appellee, v. Alicia F., appellant,
and Brian H., intervenor-appellee.
___ N.W.2d ___

Filed October 22, 2013.    No. A-12-1197.

1. **Juvenile Courts: Judgments: Appeal and Error.** Cases arising under the Nebraska Juvenile Code, Neb. Rev. Stat. §§ 43-245 through 43-2,129 (Reissue 2008 & Cum. Supp. 2012), are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

2. **Juvenile Courts: Appeal and Error.** In reviewing questions of law arising under the Nebraska Juvenile Code, an appellate court reaches conclusions independent of the lower court's rulings.

3. **Juvenile Courts: Jurisdiction: Words and Phrases.** The Nebraska Juvenile Code defines "parties" as the juvenile over which the juvenile court has jurisdiction under Neb. Rev. Stat. § 43-247 (Reissue 2008) and his or her parent, guardian, or custodian.

4. **Interventions: Pleadings.** Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences.

5. **Interventions.** Neb. Rev. Stat. § 25-328 (Reissue 2008) provides a right to intervene before trial has commenced.

6. **Interventions: Time.** A right to intervene should be asserted within a reasonable time, and the applicant must be diligent and not guilty of unreasonable delay after knowledge of the suit.